# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | 2:-11-CR-020 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| DAVID PERORAZIO, | : | |
| Defendant. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant David Perorazio's Motion to Quash the Government's Writ of Continuing Garnishment ("Writ," Dkt. 5). Rebecca Perorazio, Defendant's ex-wife, has also filed a *pro se* Request for Release of Garnishment of funds subject to the Writ which she claims are her property pursuant to the couple's divorce decree. The Writ was granted by this Court's March 1, 2012 Order (Dkt. 6), and covers the funds in the "529 College Savings Plan" owned by the Defendant, and held in trust by garnishee, Franklin Templeton Investors Services, LLC ("Account"). Since both Defendant's Motion and Rebecca Perorazio's Request seek the same relief on essentially the same legal grounds, the Court considers Ms. Perorazio's Request as a brief in support of Defendant's Motion.. For the following reasons, the Defendant's Motion to Quash the Writ of Garnishment is **GRANTED**.

### II. BACKGROUND

#### A. Factual and Procedural History

On December 1, 2008, Defendant pled guilty to one count of mail fraud committed against his former employer, Parker Hannifin Corporation ("Parker"). Defendant perpetrated a scheme whereby Defendant established a company, Advacorp Associates, to which he

fraudulently caused Parker to issue unauthorized checks for fictitious services totaling $434,153.10.[1] On March 6, 2009, Judgment was entered against Defendant in the United States District Court for the Northern District of Ohio, (Dkt. 10, p.3, No. 1:08-CR-465), imposing 21 months incarceration and criminal monetary penalties including a $100.00 special assessment, a $10,000.00 fine, and restitution in the amount of $364,000.00 payable to victim Parker. (*See* Motion, Exh. D.)[2] On May 26, 2009, the Government filed a writ of garnishment pursuant to 28 U.S.C. § 3205(b)(2) to fulfill the judgment entered against Defendant. (*Id.* Dkt. 10-5).

On December 8, 2009, Ms. Perorazio and Defendant were granted a divorce decree, with Ms. Perorazio receiving all right, title, and interest in the real property known as 5515 Heather Drive, Powell, Ohio 43065 ("House")—including a quit claim deed—as well as all interests in the Account, which is designated for the benefit of their son, Alexander Perorazio. The Decree required that Defendant "indemnify and hold [Ms. Perorazio] harmless against any claims brought by Parker." (Decree, at p. 14.) Parker filed suit against Ms. Perorazio regarding the transfer of the House, alleging that she was complicit in attempting to defraud Parker out of assets subject to Defendant's restitution obligation. (Exh. I., Parker State Compl.) Parker also filed a civil action in state court against Defendant and was awarded $3,105,368.31 in damages. (*See* Motion, Exh. K., Delaware Cty. Case. 09-CVH-04-0487 Judgment.) After Parker obtained a partial judgment against her,[3] Ms. Perorazio and Parker settled the suit whereby Ms. Perorazio paid Parker $250,000 in exchange for Parker dropping all claims against Ms. Perorazio. Defendant moved to modify the settlement and apply to $250,000 to his restitution, but the state court denied his motion in a judgment. (Govt. Exh. 5.)

---

[1] *See* Dkt.11, at 2 (noting that while Defendant issued $434,153.10 in unauthorized checks, Parker was able to stop payment on three checks. Thus, Defendant only suffered $364,000 in actual loss, the restitution amount.).
[2] Sentencing Entry, R. 13, N.D. Ohio Case No. 1:08CR465-CAB, Page Id #74 – 79, file March 6, 2009
[3] Parker received a partial summary judgment against Ms. Perorazio on charges of fraudulent conveyance, unjust enrichment, conversion, and civil conspiracy. (Dkt.10, p. 8).

On September 24, 2010, the House was sold and the net proceeds were split between Mr. and Ms. Perorazio for $128,543.20 each.[4] Prior to the sale, the Government executed a Partial Release of Judgment Lien allowing the sale of the house. The Government released the lien with Defendant's share, 50% of the net proceeds, credited towards his restitution. (Dkt 10, at p. 9). The Defendant's criminal case was transferred to this Court on February 2, 2011. On February 29, 2012, the Government filed a writ of continuing garnishment against certain of Defendant's assets, including the Account. On March 2, 2012, this Court granted the writ of continuing garnishment. On March 21, 2012, Franklin Templeton responded, acknowledging that it held the Account. (Dkt. 8.)

Defendant filed his Motion to Quash the Writ on April 4, 2012, requesting a hearing. Ms. Perorazio filed her request to quash the Writ on April 25, 2012. On July 19, 2012, Ms. Perorazio filed an urgent motion for partial release of funds from the Accounts to satisfy her daughter's college tuition payments. (Dkt. 19.) The Court granted the motion, temporarily suspending the Writ to allow limited disbursement from the Account in the amount of $9,866.00. (Dkt. 22.) The Court's temporary suspension order did not rule on the merits of the Motions to Quash and the garnishment suspension automatically lifted upon the funds' transfer. (*Id.* at 4–5.) The Account is currently valued at approximately $75,942.26.[5] (Dkt.8, at p. 2.)

### B. Disputed Accounts of Defendant's Restitution Owed

Defendant moves this Court to quash the Writ on two grounds: (1) the funds sought to be garnished are not the property of David Perorazio and therefore are not subject to garnishment; and (2) the victim for whom restitution was ordered has already been paid more than the amount of restitution ordered pursuant to the Mandatory Victims Restitution, therefore no restitution debt

---

[4] Ms. Perorazio's share of the proceeds, $128,543.20, was paid towards her settlement amount of $250,000.
[5] Per the government lien issued March 6, 2009, interest was applied a rate of 0.70%. (Dkt. 10-5, at p. 1).

3

is due. (Motion, at 1.) The Government argues that the Account is not exempt from levy, and its federal tax lien on the Account via the Writ is superior to any interest in the Account asserted by Ms. Perorazio. Finally, it argues that whether Ms. Perorazio's $250,000 in settlement proceeds is to be applied to Defendant's restitution obligation has already been fully litigated in the state court action between Parker and Ms. Perorazio. (Dkt. 11, at 12.)

The material discrepancy in accounting between the Government and Defendant stems from two main disputed issues:

(1) Whether the funds in the Account are subject to garnishment, even after the Divorce Decree purported to transfer the interest in the Account to Ms. Perorazio.

(2) Whether the $250,000 settlement payment by Ms. Perorazio to Parker to settle the state court civil action counts toward Defendant's federal criminal restitution owed to Parker.

The following Table shows the Amounts Owed by Defendant and his wife, and restitution Amounts Repaid according to the Defendant and the Government:

| **Amounts Owed by David Perorazio** | | | | |
|---|---|---|---|---|
| **Debt Owed** | **Creditor** | **Reason** | **Reference** | **Amount Paid** |
| $10,000 | State | Fine | Exhibit. D. (Dkt. 10-4), p. 5 | Disputed[6] |
| $364,000 | Parker Hannifin | Restitution | Exhibit. D, at p. 5 | Disputed[7] |
| $100 | Court | Special Assessment | Exhibit. D, at p. 5 | Paid in Full |
| **$374,100 = Total Amount Owed (not including debt paid)** | | | | |
| | | | | |
| **Amount Owed by Rebecca Perorazio** | | | | |

---

[6] *See* "David Perorazio's Credited Amounts" on the next page.
[7] *See* "David Perorazio's Credited Amounts" on the next page.

4

| $250,000[8] | Parker Hannifin | Settlement with **Rebecca Perorazio** for claims against **her** (see Exhibit M) | Exhibit N (Dkt. 10-14, p. 4) | Paid in Full |
|---|---|---|---|---|

| David Perorazio's Credited Amounts | | | |
|---|---|---|---|
| **David Perorazio's Accounting** | | **U.S. Government's Accounting[9]** | |
| $100 Special Assessment | Paid in Full $0.00 Balance (Exhibit T, Dkt. 10-20, at p. 1) | $100 Special Assessment | Paid in Full $0.00 balance |
| $10,000 Fine | **Paid in Full 3/6/09 $0.00 Balance** (Exhibit T, at p. 1) | $10,000 Fine | **Outstanding Balance** 7/12/12[10] $10,000 balance + $231.56 in interest **Total = 10,231.56**[11] (Dkt. 18, at p. 2) |
| | | | |
| $120.00 | Cash Payments (Exhibit T, at p. 1) | $11,055.00 | Misc. Cash Payments[13] (Dkt. 17, at p. 1) |
| $128,543.20 | Proceeds from sale of home (Exhibit T, at | $128,543.20 | Proceeds from sale of house (Dkt. 17, at p. 1) |

---

[8] Defendant claims that this $250,000 amount should be credited towards his restitution while the Government contends the settlement agreement covers only claims against Ms. Rebecca Perorazio. Partial summary judgment was granted against Ms. Perorazio in state court on Count VII – Fraudulent Conveyance. That court also found that Plaintiff Parker was entitled to damages on Counts I, IX, and XII to be determined at trial. *See* Exhibit M, Dkt. 10-13, at 18. Plaintiff Parker dismissed all claims against Ms. Perorazio with prejudice for the settlement amount of $250,000. *See* Exhibit N, at 4.

[9] The Government reported these numbers in the Affidavit In Support of Garnishment Action (Dkt.17) as modified (Dkt.18).

[10] *See* Dkt.18.

[11] The Government does not credit Perorazio as paying the $10,000 fine.

[12] *See* Dkt.18.

[13] The Government does not breakdown the different payments made, but credits Defendant as paying $11,055.00 (*see* Dkt.17) through his BOP account.

5

| | | | |
|---|---|---|---|
| | p. 1) | | |
| $93,636.82 | Payment from Savings Restoration Plan (Exhibit T, at p. 1) | $93,636.82 | [14] Payment from Savings Restoration Plan Credit (as of 7/12/12)[15] |
| $800.00 | BOP Account Payment | | BOP Account Payment[16] |
| $806.00 | Income Tax Refund Seizure[17] | $789.00 | Credit Given (Dkt. 17, at p. 1) |
| $250,000.00 | Restitution Paid by Settlement Agreement | | No Credit Given as Ms. Perorazio's Settlement Not Defendant's (Dkt. 11, at 10-11) |
| ($109,806.02) | Restitution Owed[18] | $130,075.00[19] $135,477.35 | Restitution Owed (w/o interest) Restitution Owed (w/ interest) |
| ($109,806.02) | TOTAL OWED[20] | $140,075.98 $145,708.91 | TOTAL OWED (w/o interest) TOTAL OWED (w/ interest) |

The Table shows that the only major dispute regarding the restitution owing is whether Ms. Perorazio's settlement with Parker in the amount of $250,000 counts toward Defendant's restitution.[21]

### III. LEGAL STANDARD

On a motion for relief from garnishment, the judgment debtor has the burden of proof.

---

[14] Prior to 7/12/12, the Government did not credit this amount towards the restitution amount.

[15] Per Dkt.18, the Government now credits Defendant with the $93,636.82 towards his restitution amount.

[16] The Government does not provide a breakdown as to specific amounts so all BOP payments are reflected in the $11,055.00 "Misc Cash Credit" line.

[17] While Dkt.10-20 (Exhibit T) states $789.00 Defendant argues in Dkt.10 that the correct amount should be $806 and not $789 as the government credits in (Dkt.17).

[18] This total is the result of subtracting the monies paid from the restitution amount ($364,000).

[19] Note that the Government's numbers are incorrect by a margin of $100.00. All numbers are taken from Dkt.17 and Dkt.18; however, when taken together the numbers should equal $129,975 not 130,075.00.

[20] The total is the result of subtracting the total paid from the total amount owed ($374,100).

[21] While originally disputed, as of 7/12/12, the Government has credited Defendant with the $93,636.82 taken from these two accounts and credited the amount towards his restitution amount. However, even with this issue aside, there is still a dispute as to whether Defendant paid off his restitution balance.

28 U.S.C. § 3205(c)(5) ("The party objecting [to the garnishee's answer] shall state the grounds for the objection and bear the burden of proving such grounds."); *see also U.S. v. Schwartz*, No. 1:09-cr-67, 2011 WL 1544624 (S.D. Ohio, Jan. 14, 2011) ("A judgment debtor who objects to the garnishee's answer to the writ must state the grounds for the objection, which the judgment debtor has the burden of proving § 3205(c)(5).").

## IV. LAW AND ANALYSIS

### A. For Purposes of the Writ, Account is Property of Defendant

Movants contend that the funds held in the Account were awarded to Ms. Perorazio in the 2009 Divorce Decree and, thus, are not subject to the Writ of Garnishment. According to movants, the March 5, 2012 Writ of Garnishment against Defendant is ineffective against property belonging to Rebecca Peroazio since 2009. Dkt.12 at 2 (quoting *Divorce Decree, Property Division*, ¶ 3(e), at 12). Rebecca Peroazio further asserts that the Divorce Decree found that there were no joint marital debts, and Defendant was obliged to indemnify her against any claims by Parker. *Id.* at 13; *Id.* at ¶ 5.

The Government, for its part, correctly identifies the governing law to be 18 U.S.C. § 3613.[22] 18 U.S.C. § 3613(a) provides, in relevant part:

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law . . . a judgment imposing a fine may be enforced against *all property or rights to property of the person fined*.

18 U.S.C. § 3613(a) (emphasis added). There are a number of exceptions, none of which Movants argue for here.[23] Furthermore, under 18 U.S.C. § 3613(c):

---

[22] Although 18 U.S.C. § 3613 refers to "fines," 18 U.S.C. § 3611 states that the subchapter, which also includes § 3613, applies to "[a] person who is sentenced to pay a fine, assessment, or restitution."

7

> [A]n order of restitution made pursuant to sections 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of this title, is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986 [26 USCS §§ 1 et seq.].

A criminal judgment operates as a federal tax lien. 18 U.S.C. § 3613(d). 18 U.S.C. § 3613(c) states further that "*[t]he lien arises on the entry of judgment* and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." The Account was property of Defendant and held in the name of Defendant when Judgment was entered March 6, 2009. It is, therefore, Defendant's property and subject to garnishment under the Government's federal tax lien attached on that date. 18 U.S.C. § 3613(c), *supra*; *Lanning Equipment Corp. v. United States*, 346 F. Supp. 1068, 1070 (N.D. Ohio 1972) ("the priority of the federal tax lien provided by 26 U.S.C. § 6321 ... is governed by the common law rule - "the first in time is the first in right."). Ms. Peroazio's Divorce Decree did not issue until December 8, 2009. Thus, following the March 6, 2009 Judgment against Defendant, a Government lien arose on the Account which Ms. Peroazio's later claim cannot defeat.

Any equitable interest Ms. Perorazio has, or had, in the Account is also defeated by the Writ. Courts must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Craft*, 535 U.S. at 278 (quoting *Drye v. United States*, 528 U.S. 49, 58 (1999)).

In *Padgett v. Home Federal Bank,* 1998 WL 204943 (Ohio App. 12th Dist. 1998), though, the Ohio Court of Appeals found that a wife had an equitable interest in the property

---

[23] The Account is not subject to any of the exemptions in 18 U.S.C. § 3613(a). *See also United States v. Craft*, 535 U.S. 274, 283 (2007) ("The statutory language authorizing the tax lien is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.").

8

legally titled to her ex-husband, her equity interest was superior only to those liens obtained *after* the date of their divorce agreement. *See also United States v. Miller*, 1996 WL 571654, at *10 (N.D. Ohio, July 18, 1996) (despite the divorce decree awarding shares of stock to spouse, the court held "income tax lien [under 26 U.S.C. § 6321] clearly attached to the stock long before any transfer . . . [T]he mere attachment of the lien gives the government a claim superior to all except purchasers, holders of security interest, mechanics lienors and judgment lien creditors . . . any transfer of the stock occurred subject to the existing tax lien."). Here, moreover, Ms. Perorazio did not take any steps to transfer the account into her name, and in fact Defendant is still the named custodian on the Account. (*See* Dkt.8, at p. 2).

Thus, any equitable interest Ms. Perorazio's has in the Account under Ohio law as Defendant's ex-wife is inferior to the Government's prior federal tax lien. Her rights under the subsequent divorce decree transfer are also inferior as she is neither a "purchaser[], holder[] of security interest, mechanics lienor[], [or a] judgment lien creditor[]." *United States v. Miller*, 1996 WL 571654, at *10. The Account is properly subject to garnishment by the Government because of its superior lien attached under the Writ.

### B. Under the Mandatory Victims' Restitution Act, Defendant Has Satisfied Restitution

Defendant bears the burden of proving restitution was paid. *United States v. Elson*, 577 F.3d 713 (6th Cir. 2009) ("Because 'the defendant should know the value of any compensation he has already provided to the victim in civil proceedings, ... the burden should fall on him to argue for a reduction in his restitution order.'") (quoting *United States v. Sheinbaum*, 136 F.3d 443, 448 (5th Cir. 1998)). The Government does not dispute that the MVRA applies. 18 U.S.C. §3664(j)(2) of the MVRA states:

> (2) Any amount paid to a victim under an order of restitution *shall be reduced by any amount later recovered as compensatory damages for the same loss* by the victim in—
>
> (A) any Federal civil proceeding; and
>
> (B) *any State civil proceeding*, to the extent provided by the law of the State.

18 U.S.C. § 3664(j)(2) (emphasis added); *See United States v. McDaniel*, 398 F.3d 540, 555 (6th Cir. 2005) (holding, "the restitution statutes do not permit victims to obtain multiple recoveries for the same loss").

Defendant contends that he has already paid more than the $374,100.00 that he owes to Parker under his criminal sentence.[24] Defendant's version of the account record follows:[25]

| Date | Amount | Instrument[26] | Amount Owed (from $374,100) |
|---|---|---|---|
| 5/11/09 | $10,100.00 | Not specified | $364,000.00 |
| 6/9/09 & 9/11/09 | $50.00 (in two $25 payments) | Paid from BOP account | $363,950.00 |
| 12/9/09 & 3/9/10 | $70.00 (in two $35 payments) | Paid from BOP account | $363,880.00 |
| 9/22/10 | $128,543.20 | Proceeds from sale of 5515 Heather (property) | $235,336.80 |
| 10/5/10 | $800.00 | Income Tax Refund | $234,536.80 |
| 3/27/12 | $789.00[27] | Income Tax Refund | $233,747.80 |
|  | $90,944.87 | Savings Restoration Plan | $142,802.93 |
|  | $2,691.95 | Executive Deferral Plan | $140,110.98 |
| 11/15/10 | $250,000.00 | Ms. Perorazio Settlement | ($109,889.02)[28] |

The disputed issue is whether the $250,000 settlement Ms. Perorazio paid to Parker counts towards Defendant's criminal restitution. Defendant argues that the $250,000.00 settlement was

---

[24] All alleged payments listed below are in Defendant's Motion, (Dkt.10, at p. 11-12).
[25] Parties do not dispute that Parker's state court judgment for $3,105,368.31 against Defendant is separate from the federal criminal judgment and is not related to the Writ of Garnishment.
[26] Information in Defendant's Exhibit T.
[27] Defendant argues the actual income tax refund was for $806 but the government only credits him $789.
[28] Defendant's motion (Dkt.10 at p. 13) cites *$109,899.02* as the amount Defendant overpaid. Note that it does not factor in interest owed; however, using the same numbers provided by Defendant, that number should be *$109,889.02*.

10

"compensatory damages" for the "same loss" to Parker as in the criminal restitution order and, thus, it should be credited towards satisfaction of Defendant's restitution. The Government, to the contrary, contends that Ms. Perorazio's civil settlement with Parker in state court is unrelated to Defendant's restitution and, furthermore, Defendant's claim is barred by *res judicata*.

### 1. Defendant's Claim Not Barred by *Res Judicata*

Before addressing the merits of Defendant's arguments under the MVRA, the Court must decide whether his claim here is barred by *res judicata*, as the Government claims. In district courts of the Sixth Circuit, state-court judgments have the same preclusive effect under the doctrines of res judicata and collateral estoppel as they "would receive in courts of the rendering state." *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999)). Put another way, "'[i]f an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court.'" *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987)).

The Court looks "to the state's law to assess the preclusive effect it would attach to that judgment." *Id.* (citations omitted). With regard to Ohio, the Sixth Circuit has stated:

> Under Ohio law, "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005). "In Ohio, collateral estoppel applies when the fact or issue[:] (1) was actually and directly litigated in the prior action[;] (2) was passed upon and determined by a court of competent jurisdiction[;] and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action."

*Ziss Bros. Constr. Co. v. City of Independence*, 439 Fed. Appx. 467, 475 (6th Cir. 2011); *Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007) (intrenal quotation marks omitted). Here, however, the Government cannot assert claim or issue preclusion against

Defendant because the issue was not "passed upon and determined by a *court of competent jurisdiction.*" *Id.* (emphasis added). While the state court had jurisdiction to find Rebecca Perorazio's settlement "did not involve Defendant David C. Perorazio's restitution obligation in the United States District Court" for the purposes of a civil case under the laws of Ohio, that decision has no effect on criminal proceedings in federal court. *See* Govt.'s Exh. 5, Judgment Entry Denying Defendant's Motion for Request to Modify Payment Party of Agreed Settlement Entry of October 21, 2010., at 2-3. Under 18 U.S.C. §3231, "[t]he district courts of the United States [] have original jurisdiction, *exclusive of the courts of the States*, of all offenses against the laws of the United States." (emphasis added) In the process of adjudicating Rebecca Perorazio's civil case, the state court never exercised, nor could it, jurisdiction over Defendant's federal criminal case. Just as this Court does not have jurisdiction to review the state court's decision to deny Defendant's motion to modify Rebecca Perorazio's settlement agreement, , that decision does not prevent this Court from finding that settlement counts towards Defendant's restitution under the federal MVRA. Thus, the issues raised in Defendant's Motion are not precluded by Ohio court's decision in the related civil action.

## 2. Parker's Settlement with Rebecca Perorazio is for Same Loss as Defendant's Restitution

In relevant part, the MVRA states that "any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss . . . in any state proceeding." 18 U.S.C. § 3664(j)(2) The Sixth Circuit has held that "when determining the amount of a restitution award under the MVRA, the court must 'reduce restitution by any amount the victim received as part of a civil settlement' . . . . to avoid[] the undesirable result of restitution effectuating a double recovery." *United States v. Elson*, 577 F.3d 713, 734 (6th Cir. 2009) (quoting *Gallant*, 537 F.3d at 1250 (citation omitted)).

12

The crucial factor here is that without Defendant having perpetrated a criminal fraud against Parker, no claim by Parker against Rebecca Perorazio exists. Parker's civil suit derived from Defendant's federal criminal offense. Although this Court is in no way bound by the state proceedings against Rebecca Perorazio, the Court agrees with the state court's finding that Rebecca Perorazio and Defendant "effectuated the transfers [of property from Defendant to Rebecca Perorazio] to provide [] Rebecca Perorazio with the assets of Defendant David Perorazio at the exclusion of a known creditor, [] Parker Hannifin." *See* Exhibit M, Dkt. 10-13, at 11. Therefore, the transfers constituted a "fraudulent conveyance." *Id*. Rebecca Perorazio did not commit a crime against Parker and her only tort was in being the recipient of fraudulent conveyances which would have allowed Defendant to avoid his restitution obligation to Parker. Parker only brought the action against Rebecca Perorazio to secure the debt owed by Defendant. In Parker's own words, "To avoid the repayment of the $364,000 the United States District Court ordered David C. Perorazio [] to repay, her deliberately made himself insolvent by fraudulently transferring his assets into the sole custody and control of his wife." (Dkt. 10-12, Parker Motion for MSJ against Rebecca Perorazio, Exh. L at 1.) It would be strange indeed for this Court to then find the money Parker extracted from Rebecca Perorazio did not count toward Defendant's debt under the restitution order.[29]

Thus, under the Sixth Circuit's decision in *Elson*, this Court " must 'reduce restitution by any amount the victim received as part of a civil settlement' . . . . to avoid[] the undesirable result of restitution effectuating a double recovery." 577 F.3d at 734. Upon this Court's proper

---

[29] Defendant also argues that since the Divorce Decree requires Defendant to hold Ms. Perorazio harmless and indemnify her against any claims brought by Parker, including any settlements, (*See* Dkt. 10-1, at p. 14), he is required to repay the $250,000.00 to Ms. Perorazio. The money should, thus, count towards satisfaction of his restitution as it ultimately comes from his assets. Although the Court does not reach this argument here because it is clear that Rebecca Perorazio's settlement compensates Parker for the same harm as Defendant's restitution, this argument could provide an alternative rationale for this ruling.

13

crediting of the $250,000.00 settlement of Rebecca Perorazio toward Defendant's restitution, the Writ must be quashed because Defendant has fully satisfied the $374,100 Restitution Order and the MVRA, in 18 U.S.C. § 3663A, prohibits additional recovery.

## V. CONCLUSION

The Government correctly argues that the Account is property of Defendant. The victim, Parker, however, has already received the full restitution amount out of Defendant's property through the respective payments of Defendant and Rebecca Perorazio. The Defendant has adduced evidence of those payments and, thus, satisfied his burden under the MVRA. Thus, Defendant's Motion to Quash Writ of Garnishment is, hereby, **GRANTED**.

**IT IS SO ORDERED.**

                                                 **s/ Algenon L. Marbley**
                                                 **ALGENON L. MARBLEY, JUDGE**
                                                 **United States District Court**

**DATE: January 7, 2013**